IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MATTHEW RIPLEY, et al., | : | CIVIL ACTION |
| | : | NO. 10-1194 |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| SUNOCO, INC., et al., | : | |
| | : | |
| Defendants. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    June 26, 2012

TABLE OF CONTENTS

I.   BACKGROUND...............................................2
II.  LEGAL STANDARD...........................................4
III. DISCUSSION...............................................5
     A.   Class Certification................................5
          1.   Rule 23(a)'s Requirements.....................8
               a.   Numerosity...............................9
               b.   Commonality..............................9
               c.   Typicality..............................12
               d.   Adequacy of Representation..............13
          2.   Rule 23(b)'s Requirements....................14
     B.   Fairness..........................................17
          1.   Terms of the Settlement Agreement............19
          2.   Analysis of the Settlement Agreement.........22
               a.   The complexity and duration of the
                    litigation..............................22
               b.   The reaction of the class to the
                    settlement..............................23
               c.   The stage of the proceedings and amount of
                    discovery completed.....................23
               d.   The risks of establishing liability and
                    risks of establishing damages...........25
               e.   The risks of maintaining a class action...27
               f.   The ability of Defendant to withstand a

1

greater judgment..........................28

g. The range of reasonableness of the settlement in light of the best recovery, and the range of reasonableness of the settlement in light of all the attendant risks of litigation......................28

h. The relevant <u>Prudential</u> factor — approval of attorneys' fees...........................29

i. The size of the fund created and the number of persons benefitted.........30

ii. The presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel.................31

iii. The skill and efficiency of the attorneys involved...................32

iv. The complexity and duration of the litigation...........................33

v. The risk of nonpayment..............33

vi. The amount of time devoted to the case by plaintiffs' counsel...............34

vii. The awards in similar cases.........34

viii. Lodestar check.....................35

C. Objection to the Settlement........................36

D. Approval of Payment to Claims Administrator........39

E. Approval of Reversionary Interest Beneficiary.......39

V. CONCLUSION...........................................40

## I.    BACKGROUND

Plaintiffs Matthew Ripley, Richard Sim, Joseph Grosse, Anne Minor, Michael Olsen, Gabriel Schwartz, Bradford Takacs, and James Savage ("Plaintiffs") commenced this action on behalf of themselves and all other similarly situated individuals

against Sunoco, Inc. ("Defendant").[1]  Plaintiffs are eight current or former operations and maintenance employees employed at Sunoco's Philadelphia, Pennsylvania refinery, located at 3144 West Passyunk Avenue (the "Refinery").  Plaintiffs aver that Defendant failed to pay them for overtime wages when they worked over forty hours per week.  Plaintiffs seek to represent a putative class of present and former operations and maintenance employees at the Refinery during a class period commencing on February 24, 2007.

Following pre-class certification discovery, and after much negotiation and two settlement conferences with Magistrate Judge Thomas Rueter, the parties reached a settlement agreement in November 2011 for a total of $675,000, inclusive of attorneys' fees and costs.  Thereafter, Plaintiffs filed a motion for preliminary class certification and approval of the settlement.  ECF No. 39.  The Court held a status and scheduling conference to discuss this preliminary approval of settlement. At this conference, the Court required Plaintiffs to include various dates and settlement amounts in their preliminary notice.  Plaintiffs complied with this request, and the Court

---

[1]      Plaintiffs also sued Michael McKee and Stephen Koczirka, but have since dismissed those individual Defendants from the suit.  See ECF No. 20.

preliminarily certified the class and approved the settlement on December 15, 2011. ECF No. 43. The Court also ordered notice sent to proposed class members. ECF No. 44. The Court received one objection to the settlement agreement that argued the proposed attorneys' fees of $222,750 were excessive, and that the claimed recovery was not reasonable. Plaintiffs recently submitted a motion for final certification and settlement approval. ECF No. 52. The Court held oral argument. The matter is now ripe for disposition.

## II.  LEGAL STANDARD

Class action settlements must be approved by the Court. See Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval."). At the threshold, the court must determine that certification of the proposed settlement class is appropriate under Rules 23(a) and (b) because "[f]ederal courts . . . lack authority to substitute for Rule 23's certification criteria a standard never adopted — that if a settlement is 'fair,' then certification is proper." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 622 (1997); see In re Cmty. Bank of N. Va., 418 F.3d 277, 299 (3d Cir. 2005) ("[T]he ultimate inquiry

4

into the fairness of the settlement under [Federal Rule of Civil Procedure] 23(e) does not relieve the court of its responsibility to evaluate Rule 23(a) and (b) considerations."). In addition, the Court will consider whether the Settlement Agreement is fair, reasonable, and adequate.  The purpose of this inquiry is "to protect the unnamed members of the class from unjust or unfair settlements."  Ehrheart v. Verizon Wireless, 609 F.3d 590, 593 (3d Cir. 2010).  In making this determination, the Court acts as a "fiduciary, guarding the claims and rights of the absent class members."  Id.

## III. DISCUSSION

Plaintiffs move for final approval of the class action settlement.  In accordance with the standard of review, the Court must determine (1) that certification of the proposed class is appropriate and (2) that the settlement "is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e).

### A.   Class Certification

Before turning to the fairness of the proposed settlement, the Court must determine that certification of the proposed settlement class is appropriate under Rules 23(a) and

(b).[2]  To do so, Plaintiffs must satisfy all of the requirements
of Rule 23(a) and the requirements of one of the subsections of
Rule 23(b).  See Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct.
2541, 2548 (2011); In re Prudential Ins. Co. Am. Sales Practice
Litig. Agent Actions, 148 F.3d 283, 309 (3d Cir. 1998).

         "Rule 23 does not set forth a mere pleading standard,"
but instead "[a] party seeking class certification must
affirmatively demonstrate his compliance with the Rule — that
is, he must be prepared to prove that there are in fact
sufficiently numerous parties, common questions of law or fact,
etc." Dukes, 131 S. Ct. at 2551.  The Supreme Court has
repeatedly "recognized . . . that 'sometimes it may be necessary
for the court to probe behind the pleadings before coming to

---

[2]         Of course, the inquiry under Rule 23(a) and (b) is not
exactly the same where the parties intend to settle as it would
be if the case was planned for trial.  Amchem, 521 U.S. at 620.
Indeed, when evaluating whether to finally certify a class for
settlement, the court should not consider matters in Rule 23
that do not apply if the case is to settle.  Id.  However, the
determination of whether the class meets Rule 23's criteria is a
rigorous one because it is the role of the Court to protect
unnamed plaintiffs' possible claims from being included in an
overly broad class.  See Wal-Mart Stores, Inc. v. Dukes, 131 S.
Ct. 2541, 2550 (2011) ("Rule 23(a) ensures that the named
plaintiffs are appropriate representatives of the class whose
claims they wish to litigate.  The Rule's four requirements —
numerosity, commonality, typicality, and adequate representation
— effectively limit the class claims to those fairly encompassed
by the named plaintiff's claims." (internal quotation marks
omitted)).

rest on the certification question,' and that certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'"  Id. at 2551 (quoting Gen. Tele. Co. of Sw. v. Falcon, 457 U.S. 147, 160-61 (1982)) (citation omitted). Indeed, even before Dukes, the Third Circuit recognized that in keeping with Rule 23(e)'s policy to protect unnamed class members, the Supreme Court has instructed that the court should be particularly vigilant in determining whether to certify a class for settlement with respect to those class certification rules in Rule 23(a) and (b) that are "designed to protect absentees by blocking unwarranted or overbroad class definitions."  Prudential, 148 F.3d at 308.

The Supreme Court has also recognized that "[f]requently, th[is] 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. Th[is] cannot be helped.'"  Dukes, 131 S. Ct. at 2551 (quoting Falcon, 457 U.S. at 160).  Indeed, "'class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'"  Dukes, 131 S. Ct. at 2552 (quoting Falcon, 457 U.S. at 160).

It is with this guidance that the Court evaluates whether the proposed class in this case meets the requirements under Rule 23(a) and (b) to establish a class.  In this regard, Plaintiffs seek final certification of the following class: "All current and former operations and laboratory employees employed by Defendant at its Philadelphia Refinery at any time from February 24, 2007 through the present."  Joint Stipulation of Settlement and Release ¶ 3, Pls.' Mot. for Preliminary Approval of Settlement Ex. 1, ECF No 39-1.

### 1.   Rule 23(a)'s requirements

Rule 23(a) requires: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation to certify a class.  See Fed. R. Civ. P. 23(a).[3]

---

[3]     Rule 23(a) provides that a class action may be maintained only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

a.   <u>Numerosity</u>

To numerosity, Rule 23(a) requires that the class be
"so numerous that joinder of all members is impracticable."
Fed. R. Civ. P. 23(a)(1).  In this case, the class includes over
485 individuals.  While there is no set minimum, if the
potential class is greater than forty, the numerosity
requirement is generally met.  <u>See</u> <u>Stewart v. Abraham</u>, 275 F.3d
220, 226-27 (3d Cir. 2001) (finding that numerosity requirement
will generally be satisfied "if the named plaintiff demonstrates
that the potential number of plaintiffs exceeds 40."); <u>Eisenberg</u>
<u>v. Gagnon</u>, 766 F.2d 770, 785-86 (3d Cir. 1985) (class of 90).
Thus, numerosity is met here.

b.   <u>Commonality</u>

Commonality "requir[es] a plaintiff to show that
'there are questions of law or fact common to the class.'"
<u>Dukes</u>, 131 S. Ct. at 2550-51 (quoting Fed. R. Civ. P. 23(a)(2)).
Before <u>Dukes</u>, courts believed that "the commonality standard of

---

    (4) the representative parties will fairly and
    adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)-(4).

Rule 23(a)(2) [was] not a high bar." <u>Chiang v. Veneman</u>, 385
F.3d 256, 265 (3d Cir. 2004) (finding "the commonality standard
of Rule 23(a)(2) is not a high bar: it does not require
identical claims or facts among class members, as 'the
commonality requirement will be satisfied if the named
plaintiffs share at least one question of law or fact with the
grievances of the prospective class'" (quoting <u>Johnston v. HBO
Film Mgmt.</u>, 265 F.3d 178, 184 (3d Cir. 2001))).

However, the Supreme Court, in <u>Dukes</u>, clarified this
standard:

> Th[e] language [of Rule 23(a)'s commonality
> requirement] is easy to misread, since any competently
> crafted class complaint literally raises common
> questions. For example: Do all of us plaintiffs
> indeed work for Wal-Mart? Do our managers have
> discretion over pay? Is that an unlawful employment
> practice? What remedies should we get? Reciting
> these questions is not sufficient to obtain class
> certification. Commonality requires the plaintiff to
> demonstrate that the class members have suffered the
> same injury. This does not mean merely that they have
> all suffered a violation of the same provision of law.
> Title VII, for example, can be violated in many ways —
> by intentional discrimination, or by hiring and
> promotion criteria that result in disparate impact,
> and by the use of these practices on the part of many
> different superiors in a single company. Quite
> obviously, the mere claim by employees of the same
> company that they have suffered a Title VII injury, or
> even a disparate-impact Title VII injury, gives no
> cause to believe that all their claims can
> productively be litigated at once. Their claims must
> depend upon a common contention — for example, the
> assertion of discriminatory bias on the part of the

10

same supervisor.  That common contention, moreover, must be of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.  What matters to class certification . . . is not the raising of common questions — even in droves — but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.  Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

Dukes, 131 S. Ct. at 2551 (citations omitted) (internal quotation marks omitted).

In this case, the commonality requirement is met. Here, while each Plaintiff's recovery might be different due to the number of hours that he or she worked without proper compensation, the wrong was from Defendant's alleged common timekeeping and payroll policies that precluded proper compensation for overtime work.

To be sure, there were several possible theories upon which Plaintiffs sought recovery.  Plaintiffs sought compensation for the following work: clearing a security checkpoint at the beginning of each shift; engaging in off-site and off-the-clock work while "on-call," donning and doffing personal protective equipment, obtaining and storing work tools, traveling to and from assigned work sites, preparing and cleaning work equipment, and engaging in shift-change briefings

11

with co-workers.  While it is unclear if each instance of this

alleged uncompensated work affected every Plaintiff in the

class, this does not run afoul of Dukes.  As the Seventh Circuit

recently noted in a Fair Labor Standards Act case, while "there

might be slight variations in how [the defendant] enforced its

overtime policy, both classes maintain a common claim that [the

defendant] broadly enforced an unlawful policy denying employees

earned overtime compensation.  This unofficial policy is the

common answer that potentially drives the resolution of this

litigation."  Ross v. RBS Citizens, N.A., 667 F.3d 900, 909 (7th

Cir. 2012).  Accordingly, the "common answer" in this case would

be whether Defendant had such policies that prevented payment

for overtime work, and if it did, then Plaintiffs had the

potential to recover.  Commonality is met here.

c.  Typicality

In determining typicality, the third 23(a)

requirement, the Court must examine whether "the named

plaintiff's individual circumstances are markedly different or .

. . the legal theory upon which the claims are based differs

from that upon which the claims of other class members will

perforce be based."  Eisenberg, 766 F.2d at 786.  Typicality

12

permits "the court to assess whether the class representatives themselves present those common issues of law and fact that justify class treatment."  Id.  As is often the case, the typicality requirement in Rule 23(a) is likely satisfied for the same reasons the commonality requirement is satisfied.  See Community Bank, 418 F.3d at 303 ("'The concepts of commonality and typicality are broadly defined and tend to merge.'" (quoting Baby Neil ex rel. Kanter v. Casey, 43 F.3d 48, 56 (3d Cir. 1994))).  Accordingly, for the same reasons expressed above, Plaintiffs meet the typicality requirement.

> d.   Adequacy of Representation

     The adequacy requirement "encompasses two distinct inquiries designed to protect the interests of absentee class members: 'it considers whether the named plaintiffs' interests are sufficiently aligned with the absentees', and it tests the qualifications of the counsel to represent the class.'" Community Bank, 418 F.3d at 303 (quoting In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 800 (3d Cir. 1995)).[4]  Here, the named Plaintiffs' interests are

---

[4]       The adequacy of counsel, for the Rule 23(a) requirements, is analyzed under Rule 23(g).  Sheinberg v. Sorensen, 606 F.3d 130, 132 (3d Cir. 2010).  The preliminary

aligned with the class as both seek to prove that Defendant's
payroll policies and procedures prevent the payment of proper
overtime wages.  Also, class counsel have extensive resumes and
history of representing plaintiffs and their associated classes
in large scale class action lawsuits such as this.  Thus, the
final Rule 23(a) requirement is met.


    2.   <u>Rule 23(b)'s Requirements</u>

    In addition to satisfying the Rule 23(a) requirements,
a putative class must fall within one of the categories
enumerated in Rule 23(b).  <u>See</u> <u>Georgine v. Amchem Prods., Inc.</u>,
83 F.3d 610, 624 (3d Cir. 1996), <u>aff'd sub nom.</u> <u>Amchem Prods.,
Inc. v. Windsor</u>, 521 U.S. 591 (1997).

    In this case, Plaintiffs seek certification under Rule
23(b)(3), which provides that certification may be granted if:

> [T]he court finds that the questions of law or fact
> common to the members of the class predominate over
> any questions affecting only individual members, and
> that a class action is superior to other available
> methods for the fair and efficient adjudication of the
> controversy.  The matters pertinent to the findings
> include: (A) the interest of members of the class in

approval order made Egan Young and Galfand Berger class counsel.
<u>See</u> Order Granting Preliminary Approval of Settlement ¶ 4, ECF
No. 43.  These firms meet the requirements of 23(g) as evidenced
in their exhibits, the discovery process, and their extensive
efforts in pursuing the case.

individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).

"The twin requirements of Rule 23(b)(3) are known as predominance and superiority." In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 310 (3d Cir. 2008). The predominance requirement overlaps with the commonality and typicality requirements in Rule 23(a); however, it is "far more demanding" than the commonality and typicality requirements. Amchem, 521 U.S. at 623. If proof of the essential elements of a cause of action requires individual treatment, "'class certification is unsuitable.'" Hydrogen Peroxide, 552 F.3d at 311 (quoting Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 172 (3d Cir. 2001)). "Because the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual . . . a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." Id. (citations omitted) (internal quotation marks omitted). In this case, there is

15

predominance of common issues of law and fact.  The key issue is
whether Defendant had a policy or practice of failing to pay
certain employees overtime for time they worked over forty hours
a week.  The Complaint alleges that Defendant's policy affected
payment for time spent clearing a security checkpoint at the
beginning of each work shift, engaging in off-site and off-the-
clock work while "on call," donning and doffing personal
protective equipment, obtaining and storing work tools,
traveling to and from assigned work sites, preparing and
cleaning work equipment, and engaging in required shift-change
briefings with co-workers.  While these are all different
avenues of non-payment of overtime, the common policy of not
paying for overtime predominates in this case and is the key to
liability.

         In addition, under Rule 23(b)(3), the class must
satisfy the test for superiority.  To do so, the Court must
"balance, in terms of fairness and efficiency, the merits of a
class action against those of alternative methods of
adjudication."  Prudential, 148 F.3d at 307-08 (internal
quotation marks omitted).  This case is about a claim for
failure to pay overtime wages.  There would have been little
incentive for Plaintiffs to bring their claims individually

because the amount of recovery, if any, would be very small. Class actions are particularly appropriate in such cases.  See Amchem, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." (internal quotation marks omitted)).  Therefore, the Court will certify Plaintiffs' proposed class for purposes of settlement approval.

    B.    Fairness

        After certifying the proposed class, the Court must evaluate the fairness of a proposed class action settlement under Rule 23(e).  See In re Ins. Brokerage Antitrust Litig., 579 F.3d 241, 258 (3d Cir. 2009) ("'Even if it has satisfied the requirements for certification under Rule 23, a class action cannot be settled without the approval of the court and a determination that the proposed settlement is fair, reasonable and adequate.'" (quoting Prudential, 148 F.3d at 316)).  Where, as here, "'settlement negotiations precede class certification, and approval for settlement and certification are sought simultaneously,'" the court must protect absentee class members by applying an "even more rigorous, heightened standard."  In re

Pet Food Prods. Liab. Litig., 629 F.3d 333, 350 (3d Cir. 2010)

(quoting In re Warfarin Sodium Antitrust Litig., 391 F.3d 516,

534 (3d Cir. 2004)) (internal quotation marks omitted).

In determining whether the Settlement Agreement is

fair, reasonable, and adequate, the Court will consider at least

the following nine factors:

> (1) the complexity, expense and likely duration of the
> litigation; (2) the reaction of the class to the
> settlement; (3) the stage of the proceedings and the
> amount of discovery completed; (4) the risks of
> establishing liability; (5) the risks of establishing
> damages; (6) the risks of maintaining the class action
> through trial; (7) the ability of the defendants to
> withstand a greater judgment; (8) the range of
> reasonableness of the settlement fund in light of the
> best possible recovery; (9) the range of
> reasonableness of the settlement fund to a possible
> recovery in light of all the attendant risks of
> litigation.

Prudential, 148 F.3d at 317 (quoting Girsh v. Jepson, 521 F.2d

153, 157 (3d Cir. 1975) (internal quotation and editorial marks

omitted)).  Whether a settlement is fair under these factors is

a discretionary determination committed to the district judge.[5]

---

[5]      The Court may also consider the following additional
non-exclusive factors, commonly referred to as the Prudential
factors:

> [T]he maturity of the underlying substantive issues,
> as measured by experience in adjudicating individual
> actions, the development of scientific knowledge, the
> extent of discovery on the merits, and other factors
> that bear on the ability to assess the probable

See, e.g., Eichenholtz v. Brennan, 52 F.3d 478, 482 (3d Cir. 1995).

       1.   Terms of the Settlement Agreement

      The Settlement Agreement provides a monetary settlement fund of $675,000.  This fund includes the attorneys' fees and costs, litigation and capped administrative costs, as well as a $25,000 set-aside to satisfy late claims.  The total attorneys' fees requested are $223,352.42; this represents 33 percent of the common fund plus the costs of $602.42.[6]  The

outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved-or likely to be achieved-for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.

Prudential, 148 F.3d at 323.  While the Court "must make findings as to each of the nine Girsh factors," the Prudential factors are merely "illustrative of additional inquiries that in many instances will be useful for a thoroughgoing analysis of a settlement's terms."  See In re Pet Food Prods. Liab. Litig., 629 F.3d 333, 350 (3d Cir. 2010).

[6]     Plaintiffs' counsel's records indicate that their costs are $890.14, but they only request $602.42.  The Court will only consider the costs to be $602.42, as this is the

requested claims administrator fee is $25,000.  The Settlement
Agreement provides that each eligible employee shall be
compensated on a pro rata basis for each "Qualifying Calendar
Quarter" worked during the class period.  See Joint Stipulation
of Settlement and Release ¶ 12(d)(i).  A Qualifying Calendar
Quarter is each three-month period during which an eligible
employee worked for at least eight weeks.  Id.  Given this
definition, the settlement for each eligible employee was
calculated as follows:  Net Settlement Fund, divided by the
total number of Qualified Calendar Quarters, which equals the
monetary value of one Qualified Quarter.  Then, the value of the
one Qualified Quarter is multiplied by the total number of
Qualified Quarters worked by each class member.  There were 441
claims forms recorded, with one objection, and three written
opt-out requests.  Under this formula, the average payout to
each Plaintiff is approximately $878.33, with the maximum payout
to a Plaintiff of approximately $1,131.23.  Pls.' Mot. for Final
Approval of Settlement 6, ECF No. 52.

---

amount included within their attorneys' fee request.  See ECF
No. 56.

In addition to this monetary relief, there is also non-monetary relief, the pertinent terms of which are summarized as follows:

Defendant is responsible for maintaining accurate time records and employees are required to confirm in writing their accuracy.  Memo. of Agreement Regarding Wage and Hour Practices ¶ 1, Pls.' Mot. for Preliminary Approval of Settlement Ex. 2, ECF No. 39-2.

The twelve-hour EOWEO shifts will be expanded to twelve hours and ten minutes, thus start times for each shift will be 6:20 a.m. and 6:20 p.m.  Id. ¶ 2.  This additional ten minutes allows for overlap and transition between the shifts. Id.  For any time worked over the ten minutes, an employee will be paid overtime with prior approval of their supervisor.  Id.

Changing in and out of NOMEX protective clothing is not work activity.  Id. ¶ 3.  Any emergency duties performed before or after an employee's shift will be compensated, however.  Id.

The Company will strictly enforce the day shift and night shift start times of 6:20 a.m. and 6:20 p.m., respectively, of the twelve-hour EOWEO shift schedule.  Id. ¶ 4.

21

The extra ten minutes of pre-shift work added will be paid at an overtime rate in accordance with currently-in-place EOWEO Agreement.  Id. ¶ 5.

The extra ten minutes will be not counted as actual overtime work for purposes of calculating employee overtime limits.  Id. ¶ 6.

The above terms will be implemented within thirty days after the Court's final approval of the settlement.  Id. ¶ 7.

### 2.   Analysis of the Settlement Agreement

Under the Girsh factors and relevant Prudential factor, the Settlement Agreement is fair, reasonable, and adequate.

### a.   The complexity and duration of the litigation

The first Girsh factor weighs slightly in favor of approving the settlement.  Plaintiffs point to the early settlement of this case, before dispositive motions were decided.  Thus, the duration from settlement to final appeal would have the potential to be long and drawn out.  Other than this, with respect to complexity and duration, Plaintiffs point

22

to run-of-the-mill facts such as the need to review discovery, need to prepare dispositive motions, and the ability of a party to appeal.

### b.   The reaction of the class to the settlement

The second Girsh factor weighs in favor of approving settlement.  Only one class member objected to the terms of the settlement or the value of the potential claims.  Moreover, less than 1 percent of the eligible class members opted out of the settlement.  The mostly uncontested nature of this settlement favors approval of the settlement.  Cf. Stoetzner v. U.S. Steel Corp., 897 F.2d 115, 118-19 (3d Cir. 1990) (noting that second factor "strongly favor[ed]" settlement where "only twenty-nine" "of 281 class members" objected to the settlement's terms).

### c.   The stage of the proceedings and amount of discovery completed

Despite the early settlement of this case, the third Girsh factor weighs slightly in favor of approving settlement because the parties conducted an "exhaustive investigation of the facts and the underlying claims and defenses in this litigation."  Pls.' Mot. for Final Approval of Settlement 10. Under this factor, "[t]he parties must have an 'adequate

23

appreciation of the merits of the case before negotiating.'" Prudential, 148 F.3d at 319 (quoting Gen. Motors, 55 F.3d at 813).

A lawyer for class counsel, Eric Young, submitted a declaration where he stated that class counsel conducted interviews of many of the current and former employees of Defendant.  Young Decl. ¶ 6, Pls.' Mot. for Final Approval of Settlement Ex. 2.  Class counsel also reviewed payroll, policy, and timekeeping documents produced by Defendant in discovery. Id.  Class counsel, with Defendant's consent, performed an informal inspection of Defendant's Philadelphia refinery.  Id. Moreover, the settlement process in this case took over six months.  The parties eventually engaged Magistrate Judge Thomas Rueter to facilitate settlement.

Therefore, the Settlement Agreement was "the product of informed negotiations."  See Prudential, 148 F.3d at 319. Thus, the third Girsh factor weighs in favor of approving the Settlement Agreement.  See Bonett v. Educ. Debt Servs., No. 01-6528, 2003 WL 21658267, at *6 (E.D. Pa. May 9, 2003) (settlement favored where "[t]he parties arrived at an arms-length settlement . . . [with] a clear view of the strengths and weaknesses of their case" (quoting In re Warner Commc'ns Secs.

24

<u>Litig.</u>, 618 F. Supp. 735, 745 (S.D.N.Y. 1985)) (internal quotation marks omitted)).

> d.   <u>The risks of establishing liability and risks of establishing damages</u>

The fourth and fifth <u>Girsh</u> factors weigh in favor of approving the settlement.  These factors, "survey the possible risks of litigation . . . to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement."  <u>Prudential</u>, 148 F.3d at 319.  This Court previously noted that these two factors "[a]pplied strictly, . . . [have] the potential to produce a result that conflicts with public policy considerations."  <u>Reibstein v. Rite Aid Corp.</u>, 761 F. Supp. 2d 241, 252 (E.D. Pa. 2011) (Robreno, J.).  That is so because these factors favor "approval of class action settlements of relative little merit on the basis that, but for the settlement, the class members are likely to go uncompensated [at all]."  <u>Id.</u>

Plaintiffs indicate that a large majority of the proposed class worked significantly less than forty hours a week.  Thus, their claims for unpaid overtime were limited.  Moreover, in many cases the allegations of pre- and post-shift donning and doffing of personal protective equipment and

clothing were difficult to prove.[7]  Also, Defendant's operational
policies and procedures objectively refuted Plaintiffs' claims.

After a careful review of the record, the Court's
concerns in Reibstein are not offended in this case.  While
Plaintiffs' likelihood of prevailing is far from certain, there
is no indication this case was brought in bad faith simply to
generate attorneys' fees, or that the case is too weak to
succeed under most circumstances.  Indeed, as Plaintiffs'
counsel explained at oral argument, while the donning and
doffing claims may have been weak, the claims for failure to pay
overtime for shift-change work were much stronger.  Therefore,
the fourth and fifth Girsh factors weigh in favor of settlement
approval because there were significant risks to Plaintiffs'
claims and may have resulted in no recovery had the case
proceeded, but not such risks that this litigation was
vexatious.  See id. at 253.

_____

[7]        Indeed, at oral argument Plaintiffs conceded that
after final review of the evidence, their claims for donning and
doffing personal protective equipment had no good faith basis
for proceeding in the suit.

26

e.   <u>The risks of maintaining a class action</u>

The sixth <u>Girsh</u> factor is neutral.  Because "[c]lass certification is always conditional and may be reconsidered," <u>Bonett</u>, 2003 WL 21658267, at *6 (quoting <u>Saunders v. Berks Credit & Collections, Inc.</u>, No. 00-3477, 2002 WL 1497374, at *12 (E.D. Pa. July 11, 2002) (internal quotation marks omitted)), it is likely Defendant would have vigorously opposed class certification or sought decertification throughout the trial. The need to defend certification appears to militate in favor of approving the settlement.  However, this is true in virtually every class action suit; therefore, it should not be a basis for concluding the sixth factor favors approval.  Here, there is no apparent reason why the Court would decertify or modify the class at any time during the litigation.  Plaintiffs provide no argument other than that there was no guaranty that a § 216(b) certification, under the Fair Labor Standards Act, would have survived a decertification motion, or that a Rule 23 motion would have been successfully adjudicated.  Therefore, the sixth <u>Girsh</u> factor is neutral.

27

f.     The ability of Defendant to withstand a
       greater judgment

The seventh Girsh factor is neutral.  This factor "is
concerned with whether [Defendant] could withstand a judgment
for an amount significantly greater than the Settlement."  In re
Cendant Corp. Litig., 264 F.3d 201, 240 (3d Cir. 2001).
Plaintiffs argue that, as Defendant is a large multi-billion
dollar company, this factor is irrelevant to the proceeding.
While that may be the case, there is no evidence in the record
for the Court to make that conclusion one way or another.  Thus,
the seventh Girsh factor is neutral.[8]

g.     The range of reasonableness of the
       settlement in light of the best recovery,
       and the range of reasonableness of the
       settlement in light of all the attendant
       risks of litigation

The eighth and ninth Girsh factors are neutral.  These
factors "ask whether the settlement is reasonable in light of
the best possible recovery and the risks the parties would face
if the case went to trial."  Prudential, 148 F.3d at 322.  "In
order to assess the reasonableness of a proposed settlement
seeking monetary relief, the present value of the damages

---

[8]     A fact noted at the hearing, although not developed,
is the uncertain business future of the Refinery.

28

plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement." Id. (internal quotation marks omitted). Plaintiffs provide no argument for the Court to consider except that experienced counsel represented both parties and, because Judge Rueter presided over the settlement negotiations, the settlement is fair. With this scant record, the Court cannot conclude either way on the weight to give these factors; therefore, the eighth and ninth Girsh factors are neutral.

> h. The relevant prudential factor – approval of attorneys' fees

As the one objection to the settlement takes issue with the amount of attorneys' fees in this case, the Court will analyze this Prudential factor. Plaintiffs' counsel seeks an award of attorneys' fees and costs in the amount of $223,352.42. This represents 33 percent of the common fund created by the Settlement Agreement plus counsel's costs — $602.42.

In determining whether to award counsel attorneys' fees, the court "must conduct a thorough judicial review of class counsels' request for attorneys' fees." Perry v. FleetBoston Fin. Corp., 229 F.R.D. 105, 118 (E.D. Pa. 2005)

(internal quotation marks omitted).  The court is tasked with ensuring that the attorneys' fees sought are reasonable.  <u>See</u> Fed. R. Civ. P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement.").  As noted, institutional concerns of fairness are necessarily implicated in this inquiry.  <u>See</u> <u>Gen. Motors</u>, 55 F.3d at 820.

When assessing the reasonableness of attorneys' fees, the Court considers the following factors:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

<u>In re Rite Aid Corp. Sec. Litig.</u>, 396 F.3d 294, 301 (3d Cir. 2005) (quoting <u>Gunter v. Ridgewood Energy Corp.</u>, 223 F.3d 190, 195 n.1 (3d Cir. 2000)).

> i.   The size of the fund created and the number of persons benefitted

In this case, the fund created is $675,000, for claims by over 400 individuals.  The average payout to each Plaintiff is approximately $878.33, with the maximum payout to a Plaintiff

of approximately $1,131.23.  "As a general rule, the appropriate percentage awarded to class counsel decreases as the size of the fund increases."  <u>Bredbenner v. Liberty Travel, Inc.</u>, No. 09-905, 2011 WL 1344745, at *19 (D.N.J. Apr. 8, 2011).  As explained below, class counsel's fees in this case represent 33 percent of the common fund and is within the range of reasonable fees, on a percentage basis, in the Third Circuit.  Therefore, the size of the fund in relation to the number of people weighs in favor of finding the fees reasonable.

> ii.  The presence or absence of substantial
>       objections by members of the class to
>       the settlement terms and/or fees
>       requested by counsel

In this case, there is only one objection to the size of both the fund and attorneys' fees.  Plaintiffs cite to several cases where there were few objections and the courts found this factor weighed in favor of finding the attorneys' fees reasonable, but in each of those cases the number of class members was much greater than in this case.  For example, in <u>Rite Aid</u>, the Third Circuit held that the "District Court did not abuse its discretion in finding the absence of substantial objections by class members to the fee requests weighed in favor of approving the fee request."  396 F.3d at 305.  In that case,

there were two objections out of 300,000 class members.  Id.  In this case, however, there is one objection out of only 488 class members.  On a percentage basis, this equates to 0.20 percent.  Whereas in Ride Aid, the percentage was much lower — 0.00067 percent.  Nonetheless, with only one objection, this factor weighs in favor of finding the fee award reasonable.

### iii. The skill and efficiency of the attorneys involved

Plaintiffs' counsel's timesheets demonstrate that Egan Young devoted a total of 470 billed hours to this case and Galfand Berger devoted a total of 140 billed hours.  Time Sheet, ECF No. 56.  There is evidence of record that class counsel diligently pursued Plaintiffs' claims and actively participated in settlement negotiations both privately with Defendant's counsel and also in front of Judge Rueter.  Therefore, to the extent that this factor can be considered given the sparse record to the contrary, it weighs in favor of finding the fee award reasonable.

iv.   The complexity and duration of the litigation

One of Plaintiffs' counsels declares that class counsel investigated this case for months, conducted many interviews of Defendant's employees, reviewed thousands of pages of documents, and had many conferences with Defendant's counsel. See Young Decl. ¶ 6.  Therefore, Plaintiffs argue, this factor weighs in favor of finding the fees reasonable.  This factor is neutral.  As explained above, the Settlement Agreement occurred before the Court decided any dispositive motions.  Although there were six months of settlement negotiations, the complexities in this case do not appear out of the ordinary for any class action complaint.  Accordingly, this factor is neutral when assessing the reasonableness the fee award.

v.   The risk of nonpayment

In this case, class counsel took the action on a contingent fee basis.  As explained above, there appears to have been a risk in this case that Plaintiffs' claims would fail for at least a significant number of class Plaintiffs.  It follows, therefore, that there was a risk of nonpayment under a contingency arrangement.  Thus, this factor weighs in favor of finding the fee award reasonable.

33

                vi.  The amount of time devoted to the case
                      by plaintiffs' counsel

Plaintiffs' counsel billed a total of 610 hours — 470 hours for Egan Young and 140 for Garland Berger — in this case. As all cases are unique, and with only one objection filed, this factor is difficult to consider.  Yet, the time devoted to this case was significant.  Accordingly, this factor weighs in favor of finding the award reasonable.

                vii. The awards in similar cases

Within the Third Circuit, courts have approved attorneys' fees ranging from 19 percent to 45 percent of the settlement fund as reasonable.  See Gen. Motors, 55 F.3d at 822; In re Schering-Plough Corp. Sec. Litig., No. 01-0829, 2009 WL 5218066, at *6 (D.N.J. Dec. 31, 2009).  While Plaintiffs point to no similar cases factually, their attorneys' fees of 33 percent of the settlement fund fall within the range recognized in the Third Circuit as reasonable.  Therefore, this factor weighs in favor of finding the fee award reasonable.

viii. Lodestar check

In addition to considering the above factors as to
reasonableness, the Court will perform a lodestar check.  "The
lodestar award is calculated by multiplying the number of hours
reasonably worked on a client's case by a reasonable hourly
billing rate for such services based on the given geographical
area, the nature of the services provided, and the experience of
the attorneys.  The multiplier is a device that attempts to
account for the contingent nature or risk involved in a
particular case and the quality of the attorneys' work."  Rite
Aid, 396 F.3d at 305-06.  In this case, Plaintiffs' counsel Egan
Young provides that it worked a total of 470 hours on this case.
The attorneys' hourly rates were either $300 or $600 an hour,
for an associate or partner, respectively.  Thus, if counsel had
billed at these hourly rates, the total legal fees would amount
to $252,120.  With respect to Egan Young's co-counsel, Galfand
Berger, it billed 140 hours in this case.  This amounted to
$78,300.  Accordingly, without any multiplier in this case,
Plaintiffs' attorneys' fees under the Settlement Agreement are
reasonable.  The Court approves Plaintiffs' requested attorneys'
fees.

Therefore, under the <u>Girsh</u> factors and relevant <u>Prudential</u> factor, the Settlement Agreement is fair, reasonable, and adequate.

C.   <u>Objection to the Settlement</u>

As stated above, there was one objection by letter to the settlement in this case.[9]  Joseph P. McCool, Sr. objected to the settlement as not fair, reasonable, or adequate.  He contends that the settlement amount was improper and does not fairly compensate class members.  Moreover, the requested attorneys' fees are excessive and disproportionate to the pro rata share of the class fund distributed to Plaintiffs.  Lastly, he argues that the release requires all class Plaintiffs not to disparage Sunoco and that this clause infringes his right to speak out against the company.

Mr. McCool appeared at the Court's hearing on Plaintiffs' Motion and expanded upon his objections.  In particular, Mr. McCool explained that while he believed the

---

[9]       At the hearing, Ms. Anne Minor, a named Plaintiff and authorized representative of the Philadelphia Local 10-1 (the "Union"), placed on the record that the Union, as a party to the collective bargaining agreement for the employees and members of the class, endorsed and approved the terms of the Settlement Agreement.

actual dollar value of the settlement was fair, the formula used
to distribute these funds to the individual Plaintiffs was done
with a "broad brush."  Mr. McCool explained that given the
specific circumstances of workers at the Refinery, some
Plaintiffs may be receiving a disproportionately high or low
amount of money.  The Court need not detail how this is so,
because even taken as true, the Court approves the formula used
to distribute the class funds in this case.  While the formula
in this case may not be the most exacting way to distribute the
funds to class Plaintiffs, a more accurate formula would require
significantly more resources.  These additional resources would
result in more fees and, accordingly, fewer funds available to
distribute to class Plaintiffs.  Thus, there are diminishing
returns to class Plaintiffs for a more specific formula.  In
light of this, the Court finds the formula used in this case,
while not perfect, adequate to fairly compensate class
Plaintiffs.[10]

Mr. McCool also objects to a portion of the release
class Plaintiffs must sign to take part in the settlement.  In
particular, the release provides that "you agree not to make any

---

[10]    Mr. McCool also argued that the attorneys' fees in
this case are excessive.  For the reasons stated above, the
Court finds this argument unavailing.  See supra Part III.B.2.h.

statement that contradicts the terms of the Settlement Agreement or which is disparaging or damaging to the business or goodwill of Sunoco."  Claim Form 2, Pls.' Mot. for Preliminary Approval of Settlement Ex. 4.  Mr. McCool takes specific issue with the restriction on statements that are "damaging to the business or goodwill of Sunoco."  Id.

Mr. McCool's objection is well taken.  With the disjunctive "or," there is no connection of disparaging remarks to terms of the Settlement Agreement.  Moreover, it is unclear what recourse Defendant would have if a class Plaintiff breached this release.  There appears to be nothing in the Settlement Agreement or Release entitling Defendant to any liquidated damages or fees from such a breach.  Given that this settlement is subject to the Court's approval, the Court finds that the restriction on presumably any remarks "disparaging or damaging to the business or goodwill of Sunoco" is too broad.  The Court will strike this restriction from the release.  Thus, the final sentence of the release shall now read: "Further you agree not to make any statement that contradicts the terms of the Settlement Agreement."

38

D.   <u>Approval of Payment to Claims Administrator</u>

Plaintiffs also seek final approval of payment to the claims administrator Heffler, Radetich & Saitta of $25,000. Heffler was responsible for verifying class members' addresses, mailing the Notice to class members, collecting and approving the claim forms, responding to class member inquiries, distributing the payments provided for, reporting the taxes and withholdings pursuant to such payments, and performing other duties.  The Court approves this fee as reasonable.

E.   <u>Approval of Reversionary Interest Beneficiary</u>

Lastly, at oral argument, Plaintiffs indicated any residual or unclaimed funds from the settlement would revert to a mutually agreed upon beneficiary.  Upon the Court's order, the parties informed the Court that the <u>cy pres</u> beneficiary in this case would be Philadelphia Area Project on Occupational Safety and Health ("PhilaPOSH").  PhilaPOSH is an organization comprised of unions, health, and legal professionals focused on health and safety concerns faced by workers and their unions. <u>See</u> PhilaPOSH Mission Statement, http://www.philaposh.org/mission_statement.htm (last visited June 25, 2012).  Since its founding in 1975, PhilaPOSH's mission

39

has been "the prevention of injury, disease and death on the job through information, education, technical assistance and political action." Id.  After review of PhilaPOSH's background and mission statement, and upon agreement of the parties, the Court designates PhilaPOSH as the cy pres beneficiary in this case.


**IV.  CONCLUSION**

For the reasons provided above, the Court will grant Plaintiffs' Motion Seeking Final Approval of a Class Action Settlement and Class Certification and approve the Settlement Agreement and requested attorneys' fees.  An appropriate order will follow.